J-A29008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.W., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 988 WDA 2025 |

Appeal from the Dispositional Order Entered June 30, 2025
In the Court of Common Pleas of Elk County Juvenile Division at No(s):
CP-24-JV-0000022-2025

BEFORE: OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED: December 15, 2025**

Appellant, M.W., appeals from the June 30, 2025 dispositional order entered in the Elk County Court of Common Pleas following his delinquency adjudication for Aggravated Assault, Simple Assault, and Robbery. Appellant challenges the sufficiency of the evidence supporting his convictions of Aggravated Assault and Robbery. After careful review, we affirm.

The factual and procedural history are as follows. On May 12, 2025, Appellant, who was then fourteen years old, assaulted A.S. ("Victim"), who was then thirteen years old, after school at Benzinger Park in Elk County because Appellant believed that Victim had spread rumors about Appellant sexually assaulting Appellant's ex-girlfriend.

Victim testified that Appellant waved him over to speak with him and said, "50 bucks or I slap you across the face." N.T., 6/13/25, at 8. Victim then ran away from Appellant and attempted to hide between park buildings.

Appellant eventually found Victim and punched him "more than once" in his head, side, and back while Victim was on the ground. *Id.* at 11. Appellant additionally kicked him "more than once" in the head. *Id.* at 12. Victim sustained scratches and bruises, as well as a bump on his head, but did not suffer any serious injuries.

At the conclusion of the assault, Appellant picked up Victim's phone and walked away. Patrolman Alexander Nester later found the phone "a couple 100 yards" away in a river while investigating the incident.[1] *Id.* at 25.

On May 23, 2025, the Elk County Juvenile Probation Department filed a delinquency petition seeking detention of Appellant, which the court granted.

On June 13, 2025, the court held an adjudication hearing, at which Victim and Patrolman Nester testified to the facts set forth above. The Commonwealth, with the agreement of Appellant's counsel, additionally played a video of the incident during the hearing.[2]

Appellant testified that he initially intended only to talk to Victim about the rumors. He did not dispute hitting and kicking Victim but asserted that he did not intend to seriously injure Victim, only that he intended to "hurt" Victim. *Id.* at 32, 37. He also stated that he stopped hitting and kicking Victim because he "didn't feel there was need for more conflict." *Id.* at 34.

---

[1] Victim initially testified that Appellant "threw it in the water" but later acknowledged that he did not see what Appellant did with the phone after he picked it up. *Id.* at 12, 20.

[2] The parties did not describe the origin of the video. *Id.*

Regarding the phone, Appellant admitted picking up the phone, because he initially thought it was his phone but, after taking a few steps, he realized it was not his and "[p]ut it on the ground." *Id.* at 33.

At the conclusion of the June 13, 2025 hearing, the court adjudicated Appellant delinquent of the following charges: Aggravated Assault, Simple Assault, and Robbery.[3] On June 30, 2025, following a dispositional hearing, the court placed Appellant on probation for 12 months for each of the three counts, to be served concurrently. The court imposed house arrest on Appellant for the first 45 days.

On July 8, 2024, Appellant filed a post-disposition motion challenging the sufficiency of the evidence, which the juvenile court denied in an order filed on July 22, 2025.

On August 5, 2025, Appellant filed a notice of appeal as well as a Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal, as required for Children's Fast Track cases pursuant to Pa.R.A.P. 904(f). The Juvenile Court complied with Pa.R.A.P. 1925(a).

Appellant raises the following issues on appeal:

> I. Did the Adjudication Court err by finding [Appellant] committed the act of Aggravated Assault, 18 Pa.C.S. § 2702(a)(1) because [Appellant] did not possess the required specific intent to inflict serious bodily injury where he did not use any weapons, ceased the incident on his own, and only intended to stop the victim from spreading rumors about [Appellant]?

---

[3] 18 Pa.C.S. §§ 2702(a)(1), 2701(a)(1), and 3701(a)(1)(iv).

II. Did the Adjudication Court err by finding [Appellant] committed the act of Robbery, 18 Pa.C.S. § 3701(a)(1)(iv), because [Appellant] was not committing a theft or attempting to commit a theft where the [Appellant] picked up the victim's cell phone thinking it was his own, [Appellant] dropped the phone once he realized it was not his, and he did not intend to deprive the victim of his cell phone?

Appellant's Br. at 5.

"A claim challenging the sufficiency of the evidence is a question of law" *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). Accordingly, "our standard of review is *de novo*[,] and our scope of review is plenary*.*" *Int. of D.J.B.*, 230 A.3d 379, 387 (Pa. Super. 2020) (citation omitted).

"When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt." *Id.* at 386 (citation omitted). In such cases, we "review the entire record and view the evidence in the light most favorable to the Commonwealth." *Id.* (citation omitted). The Commonwealth may sustain its burden based on circumstantial evidence. *Int. of N.A.D.*, 205 A.3d 1237, 1240 (Pa. Super. 2019). It is well established that "[t]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part[,] or none of the evidence." *D.J.B.*, 230 A.3d at 387 (citation omitted).

The Commonwealth may prove a defendant guilty of Aggravated Assault by demonstrating, *inter alia*, that the person "attempt[ed] to cause serious bodily injury to another[.]" 18 Pa.C.S. § 2702(a)(1). The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial

risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* at § 2301. Bodily injury, in turn, is defined as "[i]mpairment of physical condition or substantial pain." *Id.*

"Attempt, for aggravated assault purposes, is found where the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury upon another." *Commonwealth v. Galindes*, 786 A.2d 1004, 1012 (Pa. Super. 2001) (citation and internal quotation marks omitted). "[The] determination of whether an appellant acted with intent to cause serious bodily injury must be determined on a case-by-case basis." *Commonwealth v. Dailey*, 828 A.2d 356, 360 (Pa. Super. 2003). Utilizing a totality of circumstances test, the Pennsylvania Supreme Court provided the following "list, albeit incomplete, of factors that may be considered in determining whether" the Commonwealth demonstrated an intent to inflict serious bodily injury:

> evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury.

*Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006).

In addressing cases involving blows to the head, Pennsylvania courts have acknowledged that "even a single punch may be sufficient" to demonstrate the requisite intent for aggravated assault, depending on the

specific circumstances of the case. *Dailey*, 828 A.2d 359-60 (distinguishing cases where a single strike demonstrated intent to inflict serious bodily injury from cases where a single punch was insufficient evidence of intent).

Applying the *Matthew* factors, Appellant maintains that the juvenile court erred in finding the evidence sufficient to prove his intent to cause Victim serious bodily injury. Appellant's Br. at 18-25. Appellant argues that his statements to Victim did not "support a finding that [he] intended to inflict serious bodily injury." *Id.* at 22. Specifically, he notes that Victim had testified that Appellant threatened merely to slap Victim and that the video revealed Appellant saying, "you wanna keep saying shit." *Id.* at 23; *see also* N.T. at 30-31. Appellant contrasts these statements with those this Court has found to evidence intent to inflict serious bodily injury, such as threats to "blow her head off." Appellant's Br. at 22-23 (quoting *Commonwealth v. Fortune*, 68 A.3d 980 (Pa. Super. 2013)). Appellant further emphasizes that he did not use any weapons during the incident other than his hands and feet, noting that he was wearing Crocs, a soft shoe. *Id.* at 24-25.

Appellant relies upon our recent decision in *Commonwealth v. Sinkiewicz*, 293 A. 3d 681 (Pa. Super. 2023). *Id.* at 20-21. In *Sinkiewicz*, this Court concluded that the Commonwealth failed to set forth a *prima facie* case of intent to cause serious bodily injury where the defendant hit two protestors in the head with a metal baton while serving as a law enforcement officer engaged in crowd control. *Sinkiewicz*, 293 A.3d at 684. Sinkiewicz hit one victim once on her head and once on her arm and the other victim

once on the head. *Id.* at 684-85. The Court found that the facts did not evince the defendant's intent to cause serious bodily injury where the officer inflicted the blows amid the police officers' "attempt[s] to subdue a large crowd of protestors," and where "[e]ach strike was momentary and not precipitated by any threats of harm or prior confrontations." *Id.* at 691.

We find the instant case distinguishable from **Sinkiewicz**. Rather than Sinkiewicz's single, momentary strikes on the two victims while attempting to control a large crowd of protestors, Appellant struck "the victim with his fist and foot multiple times in the back of the head and neck," while Victim was on the ground. Juvenile Ct. Op., 8/14/25, at 3 (citations omitted).

Viewing this evidence in a light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient evidence for the juvenile court to find that Appellant committed Aggravated Assault. Appellant's multiple blows to Victim's head and body demonstrate that Appellant "intentionally act[ed] in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury upon another." **Galindes**, 786 A.2d at 1012. It is beyond cavil that repeatedly kicking and hitting someone in the head and neck is a substantial step to causing "serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. Accordingly, we affirm Appellant's adjudication of Aggravated Assault.

Appellant next challenges his adjudication of Robbery. "A person is guilty of robbery if, in the course of committing a theft, he . . . inflicts bodily

injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury[.]" 18 Pa.C.S. § 3701(a)(1)(iv). Theft, in turn, requires the Commonwealth to prove that a person "unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." *Id.* at § 3921. The Crimes Code defines "deprive" as, *inter alia*, "to dispose of the property so as to make it unlikely that the owner will recover it." *Id.* at § 3901.

Appellant argues that the evidence presented was insufficient to support his Robbery conviction because the Commonwealth failed to demonstrate that Appellant "possessed the requisite intent to deprive" Victim of his phone. Appellant's Br. at 25-27. Instead, Appellant contends that the testimony established only that he picked up Victim's phone and that the patrolman later found it nearby in the creek. Appellant notes that Victim admitted that he did not see Appellant dispose of the phone. *Id.* at 26. Appellant asserts that "the totality of the evidence on this point is so weak and inconclusive that, as a matter of law, it does not support a finding of intent to permanently deprive the victim of his phone or that he disposed of it so that the victim could not recover it." *Id.* at 26-27.

We disagree. As the juvenile court noted, even if Appellant initially picked up the phone by mistake, he did not return it to Victim but instead disposed of the phone such that the police found it in the nearby creek. Juvenile Ct. Op. at 4-5. Viewing this evidence as we must in a light most favorable to the Commonwealth, we agree that these actions are sufficient to

demonstrate that Appellant intended to deprive Victim of his phone, thus supporting Appellant's Robbery conviction.

As we reject both of Appellant's arguments, we affirm the juvenile court's dispositional order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/15/2025