J-S02035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMUEL LUGARO | : | |
| | : | |
| Appellant | : | No. 958 MDA 2022 |

Appeal from the Judgment of Sentence Entered January 25, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001893-2019

BEFORE:  PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: APRIL 17, 2023**

Appellant, Samuel Lugaro, appeals from the January 25, 2022 Judgment of Sentence imposed by the Dauphin County Court of Common Pleas. He challenges the sufficiency and weight of the evidence supporting his conviction for Aggravated Assault.[1]  After careful review, we affirm.

A.

We glean the facts and procedural history from the trial court's opinion and the record.  Appellant and Sierra Morales lived together in the Hall Manor housing community with their two children and had an historically volatile relationship for over 7 years that involved physical, verbal, and emotional abuse.

---

[1] 18 Pa.C.S. §2702(a)(1).

On the evening of March 1, 2019, Ms. Morales was at her cousin's house for a bingo night with her aunt and other family members. After Appellant discovered that Ms. Morales was not at home, he telephoned her several times. Ms. Morales ignored Appellant's calls, so Appellant showed up at the cousin's house and started yelling at her. Ms. Morales agreed to return to their home, but as Ms. Morales was attempting to enter Appellant's car, Appellant sped off. Ms. Morales then walked the short distance to their home, saw food thrown all over the kitchen, and found Appellant sitting in his car. Their argument resumed and escalated to a physical altercation. Appellant punched Ms. Morales in the face five times with a closed fist and choked her with both hands while violently shaking her and threatening to kill her. Ms. Morales lost consciousness several times. She ultimately escaped and ran back to her cousin's house.

When Ms. Morales arrived, her nose and mouth were bloody, she had marks on her neck, and was shaking and sobbing. Someone called 911. When police officers arrived, Officer Mark Howell took statements from Ms. Morales, her cousin, Katheria Figueroa, and others. The officers also photographed the injuries on Ms. Morale's face and neck. Ms. Morales did not go to the hospital for treatment of her injuries. She did, however, complete a domestic violence form and submitted a strangulation report.

The Commonwealth arrested Appellant and charged him with Aggravated Assault and Strangulation. Prior to opening arguments, the

parties stipulated that evidence of the volatile nature of Appellant's and Ms. Morales's relationship would be admissible.

The Commonwealth presented testimony from Ms. Morales, Ms. Figueroa, and Officer Howell, each of whom testified regarding the March 1, 2019 incident consistent with the above facts. In addition, Ms. Morales testified to Appellant's controlling and overbearing nature, as well as several prior incidents when Appellant physically and verbally abused her and threatened to kill her. Ms. Figueroa also testified that she observed Appellant verbally and physically abusing Ms. Morales. Ms. Figueroa attempted to protect Ms. Morales by persuading Ms. Morales not to return to her home with Appellant.

Appellant initially elected not to testify, and the court conducted a thorough waiver colloquy. However, the next morning before the jury entered the courtroom, Appellant requested that his attorney be discharged and informed the court that he (Appellant) "may want to testify."[2] He explained that he wanted to subpoena telephone and text message records that he believed would show that Ms. Morales and her family had lied and conspired against him, thus, exonerating him. Appellant then expounded at length about Ms. Morales's past violent conduct towards him, stating that it was *she* who had physically abused him. He also stated that Ms. Morales and Ms. Figueroa had lied on the stand to get him sent to jail. He added that he was

_____

[2] N.T. Trial, 10/19/21, at 113.

worried about their children and stated that he had been taking care of them for the past year because Ms. Morales had been in jail.[3]

The trial court denied Appellant's motion to dismiss his counsel and indicated it would not continue the trial for Appellant to subpoena records, noting that Appellant had had ample opportunity to do that before trial. When the court again asked Appellant if he wanted to testify, Appellant said no. Defense counsel presented no evidence. Counsel presented closing arguments and the court instructed the jury.

The jury found Appellant guilty of both Aggravated Assault and Strangulation. The court ordered a Pre-Sentence Investigation.[4]

On January 25, 2022, the court sentenced Appellant to a mitigated range sentence of 3½ to 7 years' incarceration on each conviction, to be served concurrently. Appellant filed a post-sentence motion, which the court denied. Appellant appealed to this Court and both Appellant and the trial court complied with Pa.R.A.P. 1925.

B.

_____

[3] On September 11, 2020, Ms. Morales was convicted of a crime involving food stamps and the court released her on probation that same day. *Id.* at 131. She remained on probation until approximately one week prior to Appellant's trial when she was incarcerated for an offense unrelated to Appellant's case. *Id.* at 119. Ms. Morales testified that she had been convicted twice for endangering the welfare of children. The trial court instructed the jury to consider evidence of Ms. Morales's prior convictions only to determine whether she had a motive that would affect her testimony. *Id.* at 149.

[4] Prior to sentencing, the court allowed trial counsel to withdraw and after Appellant petitioned for the appointment of a public defender, the court appointed current counsel, Drew F. Deyo, Esq., as conflict counsel.

Appellant presents the following questions for our review:

[1]. Whether the trial court should have granted Appellant's Post-Sentence Motion for acquittal on the charge of Aggravated Assault because there was insufficient evidence presented at trial to prove beyond a reasonable doubt that [Ms. Morales] suffered serious bodily injury or that Appellant attempted to cause [Ms. Morales] serious bodily injury?

[2]. Whether Appellant should be granted a new trial because the Jury's verdict finding him guilty of Aggravated Assault was against the weight of the evidence with respect to the element of serious bodily injury?

Appellant's Br. at 6.

C.

In his first issue, Appellant argues that the court erred in denying his motion for acquittal of the Aggravated Assault charge because "there was insufficient evidence produced at trial for the Jury to conclude that [Ms. Morales] suffered an injury of the type that would cause substantial risk of death[,] . . . a serious permanent disfigurement, or . . . a protracted loss or impairment of the function of any bodily member or organ." *Id*. at 9. Appellant also contends that "the record is also void of sufficient evidence that Appellant attempted to cause [Ms. Morales] serious bodily injury." *Id*.

Our review of a challenge to the sufficiency of the evidence is well-settled. "A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable

to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." ***Id.*** "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." ***Id.***

"A person is guilty of [A]ggravated [A]ssault if he . . . **attempts** to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1) (emphasis added). The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

"Attempt, for aggravated assault purposes, is found where 'the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury upon another.'" ***Commonwealth v. Galindes***, 786 A.2d 1004, 1012 (Pa. Super. 2001) (internal citation omitted). "A person acts intentionally with respect to a

material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i). "Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." **Miller**, 172 A.3d at 641 (citation omitted).

Where the defendant inflicts on the victim an injury that does not rise to the level of a "serious bodily injury," a factfinder may still convict a defendant of Aggravated Assault if the factfinder determines that the defendant intended to inflict a "serious bodily injury." **Commonwealth v. Dailey,** 828 A.2d 356, 359 (Pa. Super. 2003) (citation omitted). **See**, **e.g.**, **id.** at 361-62 (concluding that two punches to the victim's face before the defendant could be restrained "while positioned to continue the attack" was sufficient to support an aggravated assault conviction); **Commonwealth v. Alexander**, 383 A.2d 887, 889 (Pa. 1978) (concluding that where the appellant punched the victim once in the back of the head and walked away, the Commonwealth failed to prove aggravated assault because there was no evidence that the defendant would have escalated the attack and no evidence of statements made before, during, or after the attack indicating an intent to inflict further injury on the victim).

In denying Appellant's post-trial motion for acquittal of the Aggravated Assault charge, the court concluded that Ms. Morales's testimony regarding Appellant's multiple punches to her face, his threats to kill her, and his choking

her to the point of her blacking out established that Appellant attempted to inflict a "serious bodily injury" on Ms. Morales:

> In the instant matter, Ms. Morales testified that she and [Appellant] were arguing in [Appellant's] car when the argument turned physical. Ms. Morales testified that [Appellant] struck her in the face with a closed fist approximately five times. Additionally, Ms. Morales testified that [Appellant] choked her using both hands, causing her to lose consciousness for a couple of seconds to a minute. He also violently shook her head while he choked her and threatened to kill her. According to Ms. Morales's testimony, the assault and choking only stopped because she was able to fight back against [Appellant] and escape. We find that this Testimony is more than sufficient to show that [Appellant] attempted to cause serious bodily injury to Ms. Morales. Thus, [Appellant's] conviction of aggravated assault is supported by sufficient evidence, and he is not entitled to relief.

Tr. Ct. Op., 6/2/22, at 3.

We agree that the evidence supports Appellant's conviction for Aggravated Assault because Appellant attempted to inflict "serious bodily injury" on Ms. Morales. Ms. Morales testified that Appellant punched her in the face with a closed fist approximately five times, followed by his choking her until she briefly lost conscientiousness. N.T. Trial, 10/18, 2021, at 56-57. She also testified that she suffered pain around her neck, head, and face for a day or two after the event. *Id*. at 73. In addition to Ms. Morales's testimony, Ms. Figueroa testified that Ms. Morales returned to her house with a bloody nose and mouth and marks around her neck that were not there before the incident. *Id.* at 37. Finally, photographs taken by a police officer after the incident depicted Ms. Morales's bloody face after the assault. *See id.* at 38-39 (where

Ms. Figueroa testified that Ms. Morales "actually had more blood on her" when she got to the house than depicted in the photographs).

Considering the totality of this evidence and the reasonable inferences to be drawn therefrom, we conclude that the Commonwealth presented sufficient evidence from which the jury could reasonably conclude that Appellant took substantial and significant steps to inflict serious bodily injury on her and, thus, established Appellant's intent to cause serious bodily injury and the elements of Aggravated Assault.

Appellant's argument on this issue is conclusionary and we reject it as meritless.

D.

In his last issue, Appellant summarily avers that he should be granted a new trial based on the weight of the evidence because Ms. Morales "did not suffer a serious bodily injury, and [ ] Appellant did not attempt to cause her the type of injury that would cause a substantial risk of death."  Appellant's Br. at 15-16.  No relief is due.

A trial court will not grant relief on a weight of the evidence claim unless the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super. 2007).  On appeal, this Court may not consider the underlying question of whether the verdict is against the weight of the evidence; instead, we are limited to evaluating only the trial court's exercise of discretion in denying that claim.  *Commonwealth*

*v. Morales*, 91 A.3d 80, 91 (Pa. 2014). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a **palpable abuse of discretion**[.]" *Id.* (emphasis in original). The trial court's denial of a weight claim is the least assailable of its rulings. *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008). *See Commonwealth v. Morgan*, 913 A.2d 906, 909 (Pa. Super. 2006) (stating that because the trial court is in best position to view the evidence presented, an appellate court will give that court "the utmost consideration" when reviewing its weight determination).

In its Opinion denying Appellant's post-sentence motion for a new trial, the trial court noted that "the jury was free to weigh the testimony of Ms. Morales and judge her credibility which they did in ultimately finding [Appellant] guilty of Aggravated Assault." Tr. Ct. Op. at 4. The court observed that Ms. Morales testified that "the assault and choking only stopped because she was able to fight back against [Appellant] and escape." *Id*. at 3.

Appellant argues that the verdict is against the weight of the evidence because (1) neither Ms. Morales nor her cousin "describe[d] seeing any physical injuries consistent with serious bodily injury," (2) Ms. Morales "did not go to the hospital following the incident," (3) Ms. Morales "was able to 'run' away following the incident," and (4) "[Ms. Figueroa] testified that [Ms. Morales] walked to her house fifteen to thirty minutes following the incident, . . . the weight of the evidence presented shows that [Ms. Morales] did  not

suffer a serious bodily injury and that Appellant did not attempt to cause her the type of injury that would cause a substantial risk of death." Appellant's Brief at 16. He concludes that he "should, therefore, be afforded a new trial." *Id*. at 17.

Appellant's argument is neither legally nor factually supportable. As noted above, the fact that Ms. Morales did not *actually* suffer a serious bodily injury is irrelevant to the issue of whether Appellant intended to inflict a serious bodily injury. **Dailey**, 828 A.2d at 359. In addition, while Appellant argues that the fact that Ms. Morales managed to flee from Appellant demonstrates that he did not intend to inflict serious bodily injury, the jury chose not to place substantial weight on the fact that Ms. Morales managed to flee from Appellant. Rather, the jury relied on the fact that Appellant hit Ms. Morales five times, leaving her face bloody, to conclude that Appellant intended to inflict serious bodily harm.

Based on the "facts and inferences" presented in this case, we conclude that the trial court did not abuse its discretion in finding that the verdict was not "so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative." **West**, 937 A.2d at 521. Accordingly, Appellant's weight challenge merits no relief.

D.

In sum, the Commonwealth's evidence—that Appellant repeatedly punched and strangled Ms. Morales to the point of unconsciousness while

threatening to kill her—supports Appellant's conviction for Aggravated Assault. The jury weighed the evidence and judged the credibility of the witnesses in reaching its verdict, as was its task as factfinder. Appellant has failed to convince us that the trial court abused its discretion in denying him a new trial based on the weight of the evidence.

Judgment of Sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/17/2023